IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

MARIA VICTORIA ARGUETA, ARACELI
AGUILERA VILLARREAL, BERNARDINA
PENAS MARICHE, PAOLA PULE PENAS,
PAULINA PULE PENAS, NANCY
ELIZABETH REYES MORALES,
ELIZABETH JARQUIN PRUDENTE,
MARBELLA ALVARADO ALVAREZ, IRIS
PALACIOS CRUZ, MARIANA MORALES
PALACIOS, and EUCEBIA CORTES
FIGUEROA,

Plaintiffs,

vs.

UR M. JADDOU, *in her official capacity as*
Director of U.S. Citizenship and Immigration
Services,

Defendant.

**NO. 4:23-CV-3002**

**MEMORANDUM AND ORDER ON
DEFENDANT'S MOTION TO DISMISS**

Plaintiffs are eleven U visa petitioners who have sued defendant Director of U.S. Citizenship and Immigration Services (Defendant or USCIS), asking the Court to order USCIS to take several agency actions related to Plaintiffs' U visa applications. U visa status is available to aliens who have suffered abuse due to certain types of criminal activity and help law enforcement officials investigate this criminal activity. *See* 8 U.S.C. § 1101(a)(15)(U). Before the Court is Defendant's Motion to Dismiss for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1) and for failure to state a claim pursuant to Federal Rule of Civil Procedure

1

12(b)(6). For the reasons stated here, the Court grants Defendant's Motion to Dismiss for lack of subject matter jurisdiction.

## I. INTRODUCTION

### A. Factual Background

*1. U Visa Application Process*

U visa status is available to aliens who have suffered abuse due to certain types of criminal activity and help law enforcement officials investigate this criminal activity. *See* 8 U.S.C. § 1101(a)(15)(U). The Court will refer to this class of aliens as "principal U visa applicants." The statute provides in relevant part:

> (15) The term "immigrant" means . . . (U)(i) an alien who files a petition for status under this subparagraph, if the Secretary of Homeland Security determines that--
>
> (I) the alien has suffered substantial physical or mental abuse as a result of having been a victim of criminal activity described in clause (iii)[1];
>
> (II) the alien . . . possesses information concerning criminal activity described in clause (iii);
>
> (III) the alien . . . has been helpful, is being helpful, or is likely to be helpful to a Federal, State, or local law enforcement official, to a Federal, State, or local prosecutor, to a Federal or State judge, to the Service, or to other Federal, State, or local authorities investigating or prosecuting criminal activity described in clause (iii); and
>
> (IV) the criminal activity described in clause (iii) violated the laws of the United States or occurred in the United States (including in Indian country and military installations) or the territories and possessions of the United States[.]

---

[1] The clause (iii) of the statute defines the requisite criminal activity, as follows:

> [R]ape; torture; trafficking; incest; domestic violence; sexual assault; abusive sexual contact; prostitution; sexual exploitation; stalking; female genital mutilation; being held hostage; peonage; involuntary servitude; slave trade; kidnapping; abduction; unlawful criminal restraint; false imprisonment; blackmail; extortion; manslaughter; murder; felonious assault; witness tampering; obstruction of justice; perjury; fraud in foreign labor contracting (as defined in section 1351 of Title 18); or attempt, conspiracy, or solicitation to commit any of the above mentioned crimes.

8 U.S.C. § 1101(a)(15)(U)(iii).

8 U.S.C. § 1101(a)(15)(U)(i) (footnote added). The statute also allows for the immediate family

members of principal U visa applicants, which the Court will refer to as "derivative U visa

applicants," to receive U visas, as follows:

> (15) The term "immigrant" means . . . [(U)](ii) if accompanying, or following to
> join, the [principal U visa applicant] alien described in clause (i)--
>
> (I) in the case of an alien described in clause (i) who is under 21 years of age, the
> spouse, children, unmarried siblings under 18 years of age on the date on which
> such alien applied for status under such clause, and parents of such alien; or
>
> (II) in the case of an alien described in clause (i) who is 21 years of age or older,
> the spouse and children of such alien[.]

8 U.S.C. § 1101(a)(15)(U)(ii). Congress detailed further requirements applicable to U visas,

including "numerical limitations":

> (A) The number of aliens who may be issued visas or otherwise provided status as
> nonimmigrants under section 1101(a)(15)(U) of this title in any fiscal year shall not
> exceed 10,000.
>
> (B) The numerical limitations in subparagraph (A) shall only apply to principal
> aliens described in section 1101(a)(15)(U)(i) of this title, and not to spouses,
> children, or, in the case of alien children, the alien parents of such children.

8 U.S.C. § 1184(p)(2).

USCIS has promulgated regulations regarding U visa applications. These regulations

provide the following regarding principal U visa applicants:

> USCIS has sole jurisdiction over all petitions for U nonimmigrant status. An alien
> seeking U–1 nonimmigrant status must submit, Form I–918, Petition for U
> Nonimmigrant Status, and initial evidence to USCIS in accordance with this
> paragraph and the instructions to Form I–918.
>
> . . .
>
> If USCIS determines that the petitioner has met the requirements for U–1
> nonimmigrant status, USCIS will approve Form I–918. For a petitioner who is
> within the United States, USCIS also will concurrently grant U–1 nonimmigrant
> status[.] . . . An alien granted U–1 nonimmigrant status is employment authorized

incident to status. USCIS automatically will issue an initial Employment Authorization Document (EAD) to such aliens who are in the United States.

8 C.F.R. § 214.14(c). The regulations for derivative U visa applicants are similar:

> A petitioner for U–1 nonimmigrant status may apply for derivative U nonimmigrant status on behalf of qualifying family members by submitting a Form I–918, Supplement A, "Petition for Qualifying Family Member of U–1 Recipient," for each family member either at the same time the petition for U–1 nonimmigrant status is filed, or at a later date. An alien who has been granted U–1 nonimmigrant status may apply for derivative U nonimmigrant status on behalf of qualifying family members by submitting Form I–918, Supplement A for each family member.
>
> . . .
>
> When USCIS approves a Form I–918, Supplement A for a qualifying family member who is within the United States, it will concurrently grant that alien U–2, U–3, U–4, or U–5 nonimmigrant status.
>
> . . .
>
> When USCIS approves Form I–918, Supplement A for a qualifying family member who is outside the United States, USCIS will notify the principal alien of such approval on Form I–797. USCIS will forward the approved Form I–918, Supplement A to the Department of State for delivery to the U.S. Embassy or Consulate having jurisdiction over the area in which the qualifying family member is located, or, for a visa exempt alien, to the appropriate port of entry.
>
> . . .
>
> An alien granted U–2, U–3, U–4, or U–5 nonimmigrant status is employment authorized incident to status. To obtain an Employment Authorization Document (EAD), such alien must file Form I–765, "Application for Employment Authorization," with the appropriate fee or a request for a fee waiver, in accordance with the instructions to the form.

8 C.F.R. § 214.14(f).

### 2. *U Visa "Waiting List"*

Due to the cap on granting principal U visa applications mentioned above, 8 U.S.C. § 1184(p)(2), USCIS regulations provide for a "waiting list," which provides some interim benefits

for U visa applicants whose applications would be granted but for the cap. 8 C.F.R. § 214.14(d)(2).

The regulations provide:

> All eligible petitioners who, due solely to the cap, are not granted U–1 nonimmigrant status must be placed on a waiting list and receive written notice of such placement. Priority on the waiting list will be determined by the date the petition was filed with the oldest petitions receiving the highest priority. In the next fiscal year, USCIS will issue a number to each petition on the waiting list, in the order of highest priority, providing the petitioner remains admissible and eligible for U nonimmigrant status. After U–1 nonimmigrant status has been issued to qualifying petitioners on the waiting list, any remaining U–1 nonimmigrant numbers for that fiscal year will be issued to new qualifying petitioners in the order that the petitions were properly filed. USCIS will grant deferred action or parole to U–1 petitioners and qualifying family members while the U–1 petitioners are on the waiting list. USCIS, in its discretion, may authorize employment for such petitioners and qualifying family members.

8 C.F.R. § 214.14(d)(2).

> "Parole" is authorized in a separate provision of the U.S. Code:

> The Attorney General may . . . in his discretion parole into the United States temporarily under such conditions as he may prescribe only on a case-by-case basis for urgent humanitarian reasons or significant public benefit any alien applying for admission to the United States, but such parole of such alien shall not be regarded as an admission of the alien and when the purposes of such parole shall, in the opinion of the Attorney General, have been served the alien shall forthwith return or be returned to the custody from which he was paroled and thereafter his case shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States.

8 U.S.C. § 1182(d)(5). Plaintiffs allege that "'Parole' is a mechanism to allow otherwise inadmissible noncitizens into the United States physically, but not legally." Filing 22 at 8 (¶ 40); *see also* Filing 29 at 19 (Defendant describing parole as a mechanism authorizing noncitizens "to depart the United States and present upon return at a port of entry to seek parole back into the

United States"). "Advance parole"[2] is implemented by a USCIS regulation that states, "When parole is authorized for an alien who will travel to the United States without a visa, the alien shall be issued an appropriate document authorizing travel." 8 C.F.R. § 212.5(f); *see also* Filing 22 at 9 (¶ 44) (Plaintiffs stating that advance parole "allow[s] inadmissible noncitizens to apply for parole in advance, before seeking physical admission at the United States border"); Filing 29 at 10 (Defendant stating that "advance parole . . . allow[s] departure from the United States to travel abroad and authorizing reentry or parole of the noncitizen into the United States at a port of entry").

### 3. *U Visa "Bona Fide Determinations"*

Congress also authorized USCIS to "grant work authorization to any alien who has a pending, bona fide application for nonimmigrant status under section 1101(a)(15)(U) of this title." 8 U.S.C. § 1184(p)(6). On June 14, 2021, USCIS issued a "policy alert" with the subject line "Bona Fide Determination Process for Victims of Qualifying Crimes, and Employment Authorization and Deferred Action for Certain Petitioners." *See* Filing 22-5. USCIS's policy alert implemented this process, which is described as follows:

> Due to drastic increases in the volume of U nonimmigrant petitions and a growing backlog awaiting placement on the waiting list or final adjudication, USCIS has decided to exercise its discretion under INA 214(p)(6) [8 U.S.C. § 1184(p)(6)] to conduct bona fide determinations (BFD) and provide EADs and deferred action to noncitizens with pending, bona fide petitions who meet certain discretionary standards. . . . USCIS is implementing this guidance immediately and the guidance applies to all Form I-918 petitions that are currently pending, or filed on or after June 14, 2021. The guidance contained in the Policy Manual is controlling and supersedes any related prior guidance.

---

[2] Plaintiffs sometimes refer to advance parole as "Waiting List Parole." *See, e.g.*, Filing 22 at 11 (¶ 48) ("[M]embers of the waiting inside the United States are entitled to advance parole because "parole is authorized"—it is not discretionary—for members of the waiting list. Nevertheless, USCIS refuses to issue Waiting List Parole.") The court will use the term "advance parole."

Filing 22-5 at 2. The operative difference between "bona fide determinations" and "waiting list decisions" for the purposes of this case is that "USCIS will grant deferred action or parole to U–1 petitioners and qualifying family members while the U–1 petitioners are on the waiting list," 8 C.F.R. § 214.14(d)(2), whereas the "policy alert" authorizing "bona fide determinations" makes no mention of parole, *see generally* Filing 22-5.

### 4. The Plaintiffs

At the time Plaintiffs filed their Amended Complaint, there were 16 plaintiffs. *See* Filing 22 at 2–4. On August 9, 2023, "Plaintiffs Blanca Olvera Galicia, Roxana Raudales Zuniga, AJMR, Yosely Uloa Argueta, and Azucena Fabiola Gutierrez Ramos voluntarily dismiss[ed] their claims." Filing 27. Plaintiffs categorize the remaining eleven plaintiffs as eight "Domestic Plaintiffs" and three "Overseas Plaintiffs." Filing 22 at 2–3. The domestic plaintiffs are all principal U visa applicants, and the overseas plaintiffs are all derivative U visa applicants.

All the domestic plaintiffs have received deferred action and Employment Authorization Documents (EADs). Filing 29-1 at 3–43, 53–63. Some of the domestic plaintiffs have been issued favorable waiting list decisions (WLDs)[3] and others have been issued bona fide determinations (BFDs).[4] The domestic plaintiffs that have been issued BFDs allege that they are entitled to WLDs. Filing 22 at 15–27 (¶¶ 74–76, 86–174). All the domestic plaintiffs allege that they are entitled to advance parole. Filing 22 at 25–27 (¶¶ 152–174).

---

[3] These plaintiffs are Maria Victoria Argueta, Araceli Aguilera Villarreal, Nancy Elizabeth Reyes Morales, Elizabeth Jarquin Prudente, Marbella Alvarado Alvarez, and Eucebia Cortes Figueroa. Filing 22 at 2–3 (¶¶ 1, 5, 8–9, 12–13); Filing 29-1 at 3–37.

[4] These plaintiffs are Iris Palacios Cruz and Bernardina Penas Mariche. Filing 22 at 2–3 (¶¶ 4, 11); Filing 29-1 at 38–43, 53–63.

All of the overseas plaintiffs are related to principal U visa applicants who have received favorable WLDs and are domestic plaintiffs in this case. Filing 29-1 at 44–52, 64–105. One of the overseas plaintiffs, Palacios,[5] has received a favorable WLD and "conditional parole,"[6] but she alleges she is entitled to advance parole. Filing 22 at 25–28 (¶¶ 157–182). The two remaining overseas plaintiffs, the Penases,[7] have received Requests for Evidence (RFEs) regarding their U visa applications, for which the deadline is November 20, 2023. The Penases seek favorable WLDs and advance parole. Filing 22 at 16–27 (¶¶ 86–174).

## B. Procedural Background

Plaintiffs filed their original Complaint with this Court on January 9, 2023. Filing 1. Defendant filed a Motion to Dismiss the original Complaint on June 29, 2023. Filing 19. Plaintiffs filed an Amended Complaint on July 20, 2023. Filing 22. Plaintiffs allege that USCIS has unlawfully withheld and unreasonably delayed making WLDs and issuing advance parole in

---

[5] This plaintiff is Mariana Morales Palacios, derivative of principal domestic plaintiff Iris Palacios Cruz. Filing 22 at 3 (¶ 14); Filing 29-1 at 44–52.

[6] As explained in further detail below, the main difference between advance parole and conditional parole as alleged by Plaintiffs is that conditional parole requires "additional steps." Plaintiffs describe conditional parole as follows:

> USCIS issues parole to noncitizens directly in various ways. As noted on the instructions for the Form I-131, a parolee can apply for parole outside the United States ask [sic] to have USCIS send it to a foreign consulate for nothing more than pick-up[.]
>
> . . .
>
> "Pick-up" at the consulate is meaningfully different than an interview; in the former, the beneficiary literally travels to the consulate, gets checked in, and receives the document. This often occurs offsite at a document pickup location. An interview requires the beneficiary to complete a DS160, find an interview time (which can be months away), answer substantive questions, await a decision, and then wait for DOS to issue a foil into your passport. These additional steps include discretion unknown to § 214.14(d)(2) and puts additional burden on DOS, which too is unknown to the regulation. Because of these additional steps, the conditional WLP issued by the State Department falls short of the benefit the Plaintiffs seek in this case.

Filing 30 at 3–4.

[7] These plaintiffs are Paola Pule Penas and Paulina Pule Penas derivatives of principal domestic U visa applicant Bernardina Penas Mariche. Filing 22 at 3 (¶ 15–16); Filing 29-1 at 64–105.

violation of the APA, 5 U.S.C. § 706(1). Filing 22 at 16–27 (¶¶ 86–174). In addition, Plaintiffs allege that USCIS has acted arbitrarily and capriciously in denying advance parole in violation of the APA, 5 U.S.C. § 706(2). Filing 22 at 27–28 (¶¶ 175–182). Plaintiffs seek to compel various agency actions by USCIS, namely, order the agency to make WLDs and issue advance parole. Filing 22 at 30 (¶¶ 199–201). On August 2, 2023, the Court denied Defendant's original Motion to Dismiss as moot and without prejudice to the filing of a motion directed at the Amended Complaint. Filing 24. As mentioned above, on August 9, 2023, five plaintiffs voluntarily dismissed their claims. Filing 27. On August 24, 2023, Defendant filed the Motion to Dismiss the Amended Complaint that is presently before the Court. Filing 29.

## II.   ANALYSIS

Defendant moved to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) and for failure to state a claim pursuant to Rule 12(b)(6). Filing 29 at 1. Because the Court does not have subject matter jurisdiction over Plaintiffs' claims, as discussed below, the Court does not need to determine whether Plaintiffs failed to state a claim pursuant to Rule 12(b)(6). *See Sianis v. Jensen*, 294 F.3d 994, 997 (8th Cir. 2002) ("Subject matter jurisdiction is a threshold matter that [courts] are obligated to address at the outset.").

### A.  Rule 12(b)(1) Standards

Rule 12(b)(1) of the Federal Rules of Civil Procedure provides for a pre-answer motion to dismiss for "lack of subject-matter jurisdiction." Fed. R. Civ. P. 12(b)(1). The Eighth Circuit Court of Appeals has explained that on a Rule 12(b)(1) motion,

> The plaintiff bears "the burden of proving the existence of subject matter jurisdiction," and we may look at materials "outside the pleadings" in conducting our review. [*Herden v. United States*, 726 F.3d 1042, 1046 (8th Cir. 2013) (en banc)] (quoting *Green Acres Enters., Inc. v. United States*, 418 F.3d 852, 856 (8th Cir. 2005)). Because of the "unique nature of the jurisdictional question," *Osborn*

*v. United States*, 918 F.2d 724, 729 (8th Cir. 1990) (citation omitted), it is the court's duty to "decide the jurisdictional issue, not simply rule that there is or is not enough evidence to have a trial on the issue," *id.* at 730. As such, if the court's inquiry extends beyond the pleadings, it is not necessary to apply Rule 56 summary judgment standards. *Id.* at 729. Rather, the court may receive evidence via "any rational mode of inquiry," and the parties may "request an evidentiary hearing." *Id.* at 730 (quoting *Crawford v. United States*, 796 F.2d 924, 928 (7th Cir. 1986)). Ultimately, the court must rule upon "the jurisdictional issue [unless it] is 'so bound up with the merits that a full trial on the merits may be necessary to resolve the issue.'" *Id.* (quoting *Crawford*, 796 F.2d at 928).

*Buckler v. United States*, 919 F.3d 1038, 1044 (8th Cir. 2019); *Am. Fam. Mut. Ins. Co. v. Vein Centers for Excellence, Inc.*, 912 F.3d 1076, 1081 (8th Cir. 2019) ("[A] motion to dismiss for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1) raises a factual challenge to the court's jurisdiction, and courts may look to evidence outside the pleadings and make factual findings." (citing *Davis v. Anthony, Inc.*, 886 F.3d 674, 679 (8th Cir. 2018)).

The *Buckler* decision suggests that a challenge to subject matter jurisdiction pursuant to Rule 12(b)(1) is always "factual," but "facial" challenges are also possible:

> In deciding a motion under Rule 12(b)(1), the district court must distinguish between a facial attack—where it looks only to the face of the pleadings—and a factual attack—where it may consider matters outside the pleadings. *Osborn v. United States*, 918 F.2d 724, 729 n.6 (8th Cir.1990). In a factual attack, the "non-moving party does not have the benefit of 12(b)(6) safeguards." *Id.* If the jurisdictional issue is "bound up" with the merits of the case, the district court may "decide whether to evaluate the evidence under the summary judgment standard." *Moss v. United States*, 895 F.3d 1091, 1097 (8th Cir.2018). This court is bound by the district court's characterization of the Rule 12(b)(1) motion. *Carlsen v. GameStop, Inc.*, 833 F.3d 903, 908 (8th Cir.2016) ("The method in which the district court resolves a Rule 12(b)(1) motion—that is, whether the district court treats the motion as a facial attack or a factual attack—obliges us to follow the same approach.").

Croyle by & through *Croyle v. United States*, 908 F.3d 377, 380–81 (8th Cir. 2018).

In this case, Defendants acknowledge that a Rule 12(b)(1) challenge to subject matter jurisdiction may be either facial or factual. *See* Filing 29 at 20–22. They do not expressly commit

to one or the other as the nature of their challenge in either their opening brief or their Reply, however. *See generally* Filing 29; Filing 31. Plaintiffs appear to take no position on the nature of the challenge. *See generally* Filing 30. Nevertheless, both Defendants and Plaintiffs have submitted copious materials for the Court's consideration concerning the subject matter jurisdiction issues. *See, e.g.*, Filing 22-1; Filing 29-1. Because the parties clearly intend for the Court to consider these materials on a Rule 12(b)(1) motion, the court concludes that Defendants' challenge to subject matter jurisdiction is "factual." *Croyle*, 908 F.3d at 380-81 (explaining that the appellate court is bound by the district court's characterization of the motion as a facial or factual challenge); *see also Buckler*, 919 F.3d at 1044 (explaining that on a Rule 12(b)(1), if the court's inquiry extends beyond the pleadings, it is not necessary to apply Rule 56 summary judgment standards, and the court may receive evidence via "any rational mode of inquiry"). This is so, even though neither party has requested an evidentiary hearing. *See Buckler*, 919 F.3d at 1044 (explaining that a party may request an evidentiary hearing on a Rule 12(b)(1) motion). Under these circumstances, Plaintiffs are not entitled to Rule 12(b)(6) "safeguards." *Croyle*, 908 F.3d at 380.

In addition, "[e]stablishing subject matter jurisdiction requires a party to show it has standing to sue." *Quiles v. Union Pac. R.R. Co., Inc.*, 4 F.4th 598, 603 (8th Cir. 2021) (citing *Young Am. Corp. v. Affiliated Computer Servs. (ACS), Inc.*, 424 F.3d 840, 843 (8th Cir. 2005). The Eighth Circuit has explained how a plaintiff may show standing, as follows:

> In order to establish standing, a party must demonstrate (1) an injury in fact, (2) that is caused by the challenged conduct, and (3) that is likely to be redressed by a favorable judicial decision. An injury in fact is the invasion of a legally protected interest which is (1) concrete and particularized and (2) actual or imminent. Causation requires a "causal connection between the alleged injury and the conduct being challenged." Finally, the party must show the injury can be redressed or cured by a favorable decision issued by a court.

11

*Quiles*, 4 F.4th at 603 (internal citations omitted).

### B. The Domestic Plaintiffs Lack Standing Because They Have Not Suffered an Injury in Fact

#### 1. The Parties' Arguments

Plaintiffs allege in their Amended Complaint that "[b]ecause USCIS will not issue them WLDs, Domestic Plaintiffs cannot get [advance] Parole" and that "[t]his causes them significant harm." Filing 22 at 15 (¶ 76). Specifically, Plaintiffs argue that "USCIS is either unlawfully withholding or unreasonably delaying Plaintiffs' waiting list decisions" for the domestic plaintiffs that have received BFDs instead of WLDs. Filing 22 at 16 (¶ 87). In addition, Plaintiffs argue that USCIS has unlawfully withheld or unreasonably delayed issuing advance parole to all the domestic plaintiffs. Filing 22 at 25–27 (¶¶ 157–174). Finally, Plaintiffs argue that USCIS has acted arbitrarily and capriciously in denying them advance parole. Filing 22 at 27–28 (¶¶ 175–182). USCIS contends that the Court "lacks subject-matter jurisdiction over all eight of the domestic Plaintiffs because they lack standing to bring their claims." Filing 29 at 27.

#### 2. Standing Requirements

"No principle is more fundamental to the judiciary's proper role in our system of government than the constitutional limitation of federal-court jurisdiction to actual cases or controversies." *Sch. of the Ozarks, Inc. v. Biden*, 41 F.4th 992, 997 (8th Cir. 2022) (quoting *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 341 (2006)). Thus, "standing is a jurisdictional prerequisite that must be resolved before reaching the merits of a suit." *City of Clarkson Valley v. Mineta*, 495 F.3d 567, 569 (8th Cir. 2007). "To establish standing to sue in federal court, a plaintiff 'must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision.'" *McNaught*

*v. Nolen*, 76 F.4th 764, 768–69 (8th Cir. 2023) (citing *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016)).

Regarding the first requirement for standing, the Supreme Court has stated that "[a]n injury in fact must [ ] be 'concrete.'" *Spokeo*, 578 U.S. at 339–41. The Supreme Court described the concreteness requirement regarding statutory rights at length, as follows:

> A "concrete" injury must be "de facto"; that is, it must actually exist. When we have used the adjective "concrete," we have meant to convey the usual meaning of the term—"real," and not "abstract." . . . "Concrete" is not, however, necessarily synonymous with "tangible." Although tangible injuries are perhaps easier to recognize, we have confirmed in many of our previous cases that intangible injuries can nevertheless be concrete.
>
> . . .
>
> [This] does not mean that a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right. Article III standing requires a concrete injury even in the context of a statutory violation. For that reason, [plaintiffs] could not, for example, allege a bare procedural violation, divorced from any concrete harm, and satisfy the injury-in-fact requirement of Article III. . . . [T]he violation of a procedural right granted by statute can be sufficient in some circumstances to constitute injury in fact. In other words, a plaintiff in such a case need not allege any additional harm beyond the one Congress has identified.

3. *Spokeo, 578 U.S. at 340–41 (citations omitted). Thus, the issue here is determining whether the domestic plaintiffs suffered injuries-in-fact—that is, injuries that constitute "concrete injuries"— because of USCIS's alleged failure to issue WLDs or advance parole to which they are allegedly entitled. Domestic Plaintiffs Are Not Entitled to Advance Parole*

As discussed above, some of the domestic plaintiffs have received BFDs but not WLDs, and others have received favorable WLDs. The domestic plaintiffs with BFDs seek WLDs, and all the domestic plaintiffs seek advance parole. The Court begins with these Plaintiffs' allegations that Defendant has unlawfully withheld or unreasonably delayed advance parole. A straightforward reading of 8 C.F.R. §214.14(d)(2), the regulation establishing the Waiting List, shows that Plaintiffs have no entitlement to advance parole if they have been issued deferred action. The

relevant portion of the regulation provides, "USCIS will grant deferred action or parole to U–1 petitioners and qualifying family members while the U–1 petitioners are on the waiting list." *Id.* Plaintiffs contend that "[advance] parole is not discretionary for members of the waiting list." Filing 22 at 8 (¶ 39) (citing 8 C.F.R. § 214.14(d)(2)).

The Court notes that "granting deferred action or parole" is not discretionary for members of the waiting list. However, as the Supreme Court has made clear, "or" is "almost always disjunctive." *Encino Motorcars, LLC v. Navarro*, 138 S. Ct. 1134 (2018). Contrary to Plaintiffs' contention, USCIS is not required to grant deferred action and parole to waiting list members; rather, USCIS need only grant one or the other. Here, the record shows that all the domestic plaintiffs have deferred action, which Plaintiffs nowhere contest. *See* Filing 29-1 at 3–43, 53–63; *see generally* Filing 30. That means that they have already received what they were entitled to under the regulation. Thus, any delay or withholding of advance parole is not a "concrete" harm that "Congress has identified." *Spokeo*, 578 U.S. at 340–41. The domestic plaintiffs accordingly have no standing to assert claims based on unlawful withholding or unreasonable delay of advance parole because they have not suffered a concrete injury-in-fact. Thus, the domestic plaintiffs' claims based on advance parole are dismissed for lack of subject matter jurisdiction. *City of Clarkson Valley*, 495 F.3d at 569 ("[S]tanding is a jurisdictional prerequisite that must be resolved before reaching the merits of a suit.").

4. *Domestic Plaintiffs Who Have Received Bona Fide Determinations Have Not Suffered Injuries-in-Fact*

The Court turns to the allegations that Defendant has unlawfully withheld or unreasonably delayed WLDs for domestic plaintiffs who have received BFDs. Plaintiffs allege, "Under USCIS's new BFD policy, USCIS will not make waiting list decisions, ever, for Plaintiffs because they are

14

either inside the United States or they are derivative beneficiaries outside of the United States." Filing 22 at 18 (¶ 100). Plaintiffs further aver that "USCIS is required to make a waiting list decision on Plaintiffs' discrete applications if they are eligible for a U-visa but for the numerical cap." Filing 22 at 18 (¶ 102). Defendant responds, "The six domestic Plaintiffs seeking a Waitlist decision have suffered no injury in fact because, by receiving a favorable BFD, they have already received the same benefits that a favorable waitlist review would provide; the difference is only that an agency chose a different process for them to receive those benefits through." Filing 29 at 29. The Court agrees with Defendant.

USCIS regulations provide, "All eligible petitioners who, due solely to the cap, are not granted U–1 nonimmigrant status must be placed on a waiting list and receive written notice of such placement." 8 C.F.R. § 214.14(d)(2). Plaintiffs allege that USCIS violated this regulation because it did not place some of the domestic plaintiffs on the Waiting List but instead issued them BFDs. Filing 22 at 15 (¶ 76). In addition, the regulations provide that "remaining U–1 nonimmigrant numbers for that fiscal year will be issued to new qualifying petitioners in the order that the petitions were properly filed." 8 C.F.R. § 214.14(d)(2). Plaintiffs further allege that "USCIS systematically prioritizes later filed petitions over earlier filed petitions for U-status waiting list decisions." Filing 22 at 19 (¶ 114). The Court agrees with Plaintiffs that 8 C.F.R. § 214.14(d)(2) mandates placement of eligible individuals on the waiting list in the order that the petitions are filed. However, because Plaintiffs cannot "allege a bare procedural violation, divorced from any concrete harm, and satisfy the injury-in-fact requirement of Article III," *Spokeo*, 578 U.S. at 340, the Court must determine whether USCIS's departures from the applicable regulations are "bare procedural violation[s]" or "concrete harm[s]." To do so, the Court will consider the "concrete" differences, if any, between receiving a BFD and a favorable WLD.

15

As discussed above, individuals who have received favorable WLDs are entitled to "deferred action or parole," not both, and can receive discretionary work authorization. 8 C.F.R. § 214.14(d)(2). Conversely, as Plaintiffs allege, "Noncitizens with a BFD can acquire work authorization and deferred action," but not advance parole Filing 22 at 12 (¶ 57). Indeed, all domestic plaintiffs have received work authorization and deferred action. Filing 29-1 at 3–37. The only difference between the Waiting List and receipt of a BFD is the possibility of parole. Accordingly, Plaintiffs essentially argue that by receiving BFDs rather than being placed on the Waiting List they are deprived of the possibility of receiving advance parole, which Defendant described as "allow[ing] departure from the United States to travel abroad and authorizing reentry or parole of the noncitizen into the United States at a port of entry," a characterization that Plaintiffs do not dispute. Filing 29 at 10; *see also* Filing 22 at 13 (¶ 59) (alleging that "the BFD policy eliminates waiting list decisions—and [advance] Parole"). This may constitute an injury-in-fact if receiving advance parole was mandatory as part of the Waiting List, as Plaintiffs contend. Filing 39 at 8 (¶ 39) (arguing that "[advance] parole is not discretionary for members of the waiting list"). But as discussed above, issuing advance parole is merely one of two options that Defendant has at its disposal (with deferred action being the other option). Also, as the above section makes clear, Defendant can exercise and has lawfully exercised its discretion to deny advance parole to individuals on the Waiting List. Therefore, the domestic plaintiffs are not denied anything to which they are entitled because they received BFDs instead of spots on the U Visa waiting list. Because this is a "bare procedural violation, divorced from any concrete harm," the domestic plaintiffs have not suffered any injury-in-fact that confers standing on them. The Court dismisses all the domestic plaintiffs' claims for lack of subject matter jurisdiction under Rule 12(b)(1). *City of Clarkson*

16

*Valley*, 495 F.3d at 569 ("[S]tanding is a jurisdictional prerequisite that must be resolved before reaching the merits of a suit.").

### C. Plaintiff Palacios's Claim Is Moot

Plaintiff Palacios has received a favorable WLD and conditional parole,[8] Filing 29-1 at 46–54, but she seeks advance parole. Filing 22 at 25–28 (¶¶ 157–182). Defendant contends that Palacios's claim is moot because she "has received the agency action she seeks—conditional parole into the United States." Filing 29 at 25. Plaintiffs argue that Palacios "do[es] not seek conditional parole. [She] seek[s] mandatory, [advance] parole issued by USCIS." Filing 30 at 1. Defendant responds that Palacios's "preference for a different process does not affect the mootness of this case, where USCIS has conditionally authorized parole for [Palacios] and fulfilled the regulatory provision." Filing 31 at 2.

A claim is moot if "during the course of litigation, the issues presented in a case lose their life because of the passage of time or a change in circumstances and a federal court can no longer grant effective relief. The difference between standing and mootness is merely one of time frame: The requisite personal interest that must exist at the commencement of the litigation (standing)

---

[8] The USCIS letter addressed to Palacios stated in relevant part:

> USCIS has conditionally approved your request for parole for your family member for a period of one year contingent upon successful completion of identity verification and biometric checks.
>
> . . .
>
> If USCIS determines that your family member is not eligible for waiting list placement or parole due to new information obtained after they appear for identity verification and biometric collection at the U.S. Embassy or Consulate, USCIS may remove your family member from the waiting list and deny your parole request.
>
> . . .
>
> Provided that the U.S. Embassy or Consulate does not discover new information that would impact eligibility for waiting list placement or parole, a travel document (boarding foil) will be issued to your family member.

Filing 29-1 at 51.

must continue throughout its existence (mootness)." *McNaught*, 76 F.4th at 769 (cleaned up and citations omitted). A claim is moot when "changed circumstances already provide the requested relief and eliminate the need for court action" and "a speculative possibility of future harm is not enough to preserve a live case or controversy under Article III." *Brazil v. Arkansas Dep't of Hum. Servs.*, 892 F.3d 957, 959–960 (8th Cir. 2018). "[The] mootness inquiry focuses on whether the relief [Plaintiff] seeks here is different than the relief she obtained . . . not which party may ultimately be correct about the propriety of the relief sought." *Lang v. Soc. Sec. Admin.*, 612 F.3d 960, 967 (8th Cir. 2010). Moreover, the Eighth Circuit has considered the level of similarity between the relief requested and obtained that is required to moot a case, having "held that an action seeking an injunction to alter prison conditions becomes moot once the plaintiff transfers to another facility." *Brazil*, 892 F.3d at 960 (citing *Smith v. Hundley*, 190 F.3d 852, 855–56 (8th Cir. 1999)). The court also held that a plaintiff who sought "injunctive relief requiring [her employer] to transfer her to a suitable position under the direction of different supervisors" had "already received what she seeks" when the plaintiff "changed positions" and now "reports to different supervisors." *Id.* at 959–960.

The Court must determine whether Palacios seeks relief (advance parole) that is different than the relief she obtained (conditional parole), thereby preserving a live controversy. Plaintiffs aver that Palacios "seeks mandatory parole issued by USCIS, not DOS." Filing 30 at 2. Plaintiffs continue that "USCIS has authority to issue parole directly to a noncitizen who is living abroad, and its inclusion of [Department of State (DOS)] in this process is unnecessary and problematic." Filing 30 at 3. Regarding the differences between conditional parole issued by DOS and advance parole issues by USCIS, Plaintiffs state the following:

18

USCIS issues parole to noncitizens directly in various ways. As noted on the instructions for the Form I-131, a parolee can apply for parole outside the United States ask [sic] to have USCIS send it to a foreign consulate for nothing more than pick-up[.]

. . .

"Pick-up" at the consulate is meaningfully different than an interview; in the former, the beneficiary literally travels to the consulate, gets checked in, and receives the document. This often occurs offsite at a document pickup location. An interview requires the beneficiary to complete a DS160, find an interview time (which can be months away), answer substantive questions, await a decision, and then wait for DOS to issue a foil into your passport. These additional steps include discretion unknown to § 214.14(d)(2) and puts additional burden on DOS, which too is unknown to the regulation. Because of these additional steps, the conditional WLP issued by the State Department falls short of the benefit the Plaintiffs seek in this case.

Filing 30 at 3–4.

The Court concludes that the conditional parole obtained by Palacios is substantially the same as the advance parole she seeks. The Court observes that the essence of Palacios's claim is not that conditional parole is substantively different than advance parole but instead that the two are procedurally different; conditional parole requires "additional steps" to effectuate, such as answering questions at the consulate. Because conditional parole is substantively identical to advance parole, Plaintiff's claim became moot when USCIS issued the conditional parole. "It makes no difference that it is theoretically possible that the plaintiff could" fail to carry out the "additional steps" because Palacios's claim is "no more than a speculative or hypothetical claim of future injury." *Brazil*, 892 F.3d at 960 (citations and quotations omitted).

The Eighth Circuit has also explained the exceptions to the mootness doctrine: "An otherwise-moot case is still justiciable if (1) there is a reasonable expectation that the same complaining party will be subjected to the same action again; and (2) the challenged action is of a duration too short to be fully litigated before becoming moot." *Noem v. Haaland*, 41 F.4th 1013,

19

1016 (8th Cir. 2022) (cleaned up). In addition, "'[a] defendant's voluntary cessation of a challenged

practice' moots a case only if it is 'absolutely clear that the allegedly wrongful behavior could not

reasonably be expected to recur.'" *Wright v. RL Liquor*, 887 F.3d 361, 363 (8th Cir. 2018) (quoting

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC) Inc.*, 528 U.S. 167, 169-70 (2000). These

exceptions are inapplicable because Plaintiff has already received the relief to which she is entitled;

there is no "challenged action" that could recur. Therefore, because Plaintiff's claim is moot, the

Court must dismiss it for lack of subject matter jurisdiction.

### D.  The Penases' Claims Are Not Ripe

Defendant contends that the Penases' claims "are not actually ripe for review." Filing 29

at 16. Defendant explains that "USCIS issued [a request for evidence (RFE)] to their principal

domestic" U visa applicant and that "USCIS cannot take any further action on these two overseas

Plaintiffs' I-918/As until either a response is received from them, or the deadline for a response

expires." Filing 29 at 16–17. The record shows and Plaintiffs do not attempt to rebut that USCIS

sent the Penases' principal U visa applicant a letter requesting several pieces of evidence relating

to identification and background checks with a deadline of November 20, 2023. Filing 29-1 at 77–

86, 98–107. Although that deadline has now passed, neither party has provided the Court with

evidence that the Penases have provided the information requested by USCIS or that USCIS has

made any decisions related to the Penases' applications. In response, Plaintiffs merely state

"USCIS argues that the overseas Plaintiffs' claims are . . . unripe because . . . it will issue the other

two conditional parole." Filing 30 at 1 (emphasis omitted).

"The ripeness requirement serves 'to prevent the courts, through avoidance of premature

adjudication, from entangling themselves in abstract disagreements over administrative policies,

and also to protect the agencies from judicial interference until an administrative decision has been

formalized and its effects felt in a concrete way by the challenging parties.'" *Sch. of the Ozarks*, 41 F.4th at 997–98 (quoting *Abbott Lab'ys v. Gardner*, 387 U.S. 136, 148-49 (1967)). "A case is fit for judicial decision when it would not benefit from further factual development and poses a purely legal question not contingent on future possibilities." *Sch. of the Ozarks*, 41 F.4th at 998 (citation omitted).

As discussed above, the Penases are overseas, derivative U visa applicants who are seeking WLDs and advance parole. Filing 22 at 16–27 (¶¶ 86–174). The record shows that the Penases are in the midst of the U visa application process, Filing 29-1 at 77–86, 98–107, and Plaintiffs do not dispute Defendant's contention that "[t]o the extent Plaintiffs claim these two overseas Plaintiffs [the Penases] have already received Waitlist decisions, they have not." Filing 29 at 16 n.20. USCIS has not yet denied these Plaintiffs what they seek—WLDS and advance parole—and very well may grant them that relief. However, because there is no indication in the record that the Penases have provided the information requested by USCIS to process their applications, nor that USCIS has yet made any decisions related to their applications, Plaintiffs' claims are "contingent on future possibilities." *Sch. of the Ozarks*, 41 F.4th at 998 (citation omitted). To consider the Penases' claims at this juncture would be "premature adjudication" and constitute "judicial interference" with USCIS because there is no evidence that "an administrative decision has been formalized [nor] its effects felt in a concrete way by the challenging parties." *Id.* at 997–98 (citation omitted). The Penases' claims would "benefit from further factual development"; namely, a decision on their

U visa applications by USCIS. *Id.* at 998 (citation omitted). Thus, because the Penases' claims are not ripe, the Court lacks subject matter jurisdiction over them.[9]

### III. CONCLUSION

For these reasons, the Court grants Defendants' Motion to Dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1). The domestic plaintiffs lack standing to bring their claims, Palacios's claims are moot, and the Penases' claims are unripe. All claims in this case are dismissed. Accordingly,

IT IS ORDERED that Defendant's Motion to Dismiss, Filing 29, is granted.

Dated this 21st day of November, 2023.

BY THE COURT:

Brian C. Buescher
United States District Judge

---

[9] The Court's holdings herein do not necessarily prevent the Penases from bringing claims in the future challenging an unfavorable USCIS action, but the Penases have not yet alleged facts giving rise to an injury that would permit the court to exercise subject matter jurisdiction over their claims.